## IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | } |
| | } Case No. 07-06665 |
| Shirley A. White | } Chapter 7 |
| | ) Judge Susan Pierson  Sonderby |
| | } Hearing Date:  October 17, 2007 |
| **Debtor** | } Hearing Time:  10:00 A.M. |

### Notice of Motion

To:  *See Attached Service List*

PLEASE TAKE NOTICE that on **October 17, 2007**, at 10:00 a.m., or as soon thereafter as counsel may be heard, we shall appear before the Honorable Susan Pierson Sonderby or before any other bankruptcy judge sitting in her stead, in Courtroom 642, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present **Trustee's Application for Order 1) Authorizing Sale of Real Estate Free and Clear of Liens, Claims and Interests and 2) Allowing and Authorizing Payment of Final Compensation to Real Estate Broker,** a true and correct copy of which is hereby served upon you.

Joseph A. Baldi
Attorney ID No. 00100145
Joseph A. Baldi & Associates
Suite 1500
19 S. LaSalle Street
Chicago, Illinois  60603
312-726-8150

### CERTIFICATE OF SERVICE

I, Joseph A. Baldi, hereby certify that on September 24, 2007 I caused a true and correct copy of the foregoing Notice of Motion and the document identified therein to be served on the persons on the attached service list, either electronically or via first class mail, postage prepaid, as indicated on the service list.

_____/s/_____
Joseph A. Baldi

**Service List**
*Shirley A. White , debtor*
*Case No. 07-06665*

Office of the U.S. Trustee
227 West Monroe Street
Suite 3350
Chicago, IL  60606
USTPRegion11.ES.ECF@usdoj.gov
**Via Electronic Notice**

**Alexander Tynkov**
Zalutsky & Pinski, Ltd
20 N Clark St
Suite 600
Chicago, IL 60602
ecf@zaplawfirm.com
**Via Electronic Notice**

**Thomas Twomey**
Zalutsky & Pinski Ltd
20 N Clark St.
Suite 600
Chicago, IL 60602
ecf@zaplawfirm.com
**Via Electronic Notice**

**Timothy R Yueill**
Law Offices of Ira T. Nevel
175 N. Franklin
Chicago, IL 60606
timothyy@nevellaw.com
**Via Electronic Notice**

**Christopher A. Weinum**
407 S. Dearborn Street, Suite 1310
Chicago, IL 60605
**Via First Class Mail**

Shirley White
5254 W. Polk Street
Chicago, IL 60644
**Via First Class Mail**

2

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 07 B 06665 |
| | ) | Chapter 7 |
| Shirley A. White, | ) | Hon. Susan Pierson Sonderby |
| Debtor. | ) | Hearing Date:  October 17, 2007 |
| | ) | Time: 10:00 a.m. |

### Trustee's Application for Order 1) Authorizing Sale of Real Estate
### Free and Clear of Liens, Claims and Interests and 2) Allowing and Authorizing
### Payment of Final Compensation to Real Estate Broker

Joseph A. Baldi, not personally but solely as trustee ("Trustee") of the estate

("Estate") of Shirley A. White, debtor ("Debtor"), pursuant to 11 U.S.C. § 363, respectfully

requests this Court to enter an order i) authorizing him to sell the Estate's interest in the

real property commonly known as 5254 W. Polk, Chicago, IL which is owned by the Estate,

free and clear of liens, claims and interests and 2) allowing and authorizing Trustee to pay

final compensation in the amount of $8,700.00 to Dorothy Harmon of Remax Preferred

Brokers for her services as a real estate broker for the Estate.  In support thereof, Joseph

A. Baldi respectfully states as follows:

### Introduction

1.      Debtor commenced this case by filing his voluntary petition for relief under

Chapter 7 of the Code ("Code") on April 13, 2007.

2.      Joseph A. Baldi is the duly appointed, qualified and acting trustee in this

case.

3.      Among the assets belonging to this Estate is a parcel of real estate improved

by a single family home which is located at 5254 W. Polk, Chicago, IL("Property").  Trustee

is informed and believes that Debtor owns the property individually.

4.      The Property is encumbered by a mortgage lien in favor of CitiMortgage, Inc. ("CitiMortgage") and Trustee is informed and believes that the claim of CitiMortgage is currently approximately **$93,000.00.** Trustee is not aware of any other liens against the Property. The Property may also be subject to statutory liens for real estate taxes due for the Property and water charges.

### Offer to Purchase Property

5.      Trustee determined that there may be equity in the Property for the Estate in light of the estimated value of the Property and the amount of the liens against the Property. As a result, Trustee retained Dorothy Harmon as a real estate broker and listed the Property for sale. Dorothy Harmon has marketed the Property on behalf of the Estate.

6.      Trustee has received an offer to purchase the Property from Marquita Curry ("Purchaser") for a purchase price of $145,000.00 ("Purchase Price"). Purchaser and Trustee have entered into a Real Estate Sales Contract ("Sales Contract"), a copy of which is attached hereto as Exhibit A. The essential terms of the Sales Contract provide as follows:

a)      Purchaser will pay the Purchase Price by the payment of an initial earnest money deposit of $1000.00 with the balance to be paid in cash at closing;

b)      Purchaser will purchase the Property "as is – where is" with no warranties or representations regarding the condition of the Property;

c)      The Property will be transferred free and clear of liens, claims and interests, with all such liens, claims and interest to attach to the proceeds of sale;

2

d)     The Sales Contract is subject to and conditioned on the entry of an order of

this Court approving the Sales Contract and authorizing the sale; and

e)     Closing will take place on October 31, 2007 or as agreed by the Parties.

7.     Trustee believes the Purchaser's Sales Contract is fair and reasonable and

represents the highest and best price for the Property.   Trustee has reviewed an appraisal

for the Property and believes that Purchaser's offer is well within the range of the

Property's appraised value.  Furthermore, Trustee has not received any other offers for the

Property and Trustee believes Purchaser's offer is the highest offer he will receive for the

Property.  If approved, the Estate will realize substantial equity from the proposed sale of

the Property after the payment of liens claims and interests, the customary costs of sale

and the Debtor's homestead exemption.

8.     Trustee requests that the order approving the sale of the Property provide

that the Property will be sold free and clear of liens, claims and interests, with all liens,

claims or interests to attach to the proceeds of sale in accordance with §363(b) and 363 (f)

of the Code.  The sale proceeds will be sufficient to pay all known liens against the

Property in full, after payment of the usual and customary costs of sale.

### Request to Pay Brokers Commission

9.     On August 21, 2007, Trustee obtained an order of this Court authorizing the

retention of Dorothy Harmon of Remax Preferred Brokers to represent the estate as a real

estate broker pursuant to the terms and conditions of an exclusive right to sell agreement

and attached rider ("Listing Agreement")  dated August 7, 2007. Pursuant to the terms of

the Listing Agreement Dorothy Harmon is entitled to receive a broker's commission in an

3

amount equal to 6 % of the sale price for the Property, subject to approval by this Court upon the closing of this transaction. The Listing Agreement also provided that no commission is earned by or payable to Dorothy Harmon unless and until both (i) the Property is sold to a Purchaser introduced to the Property during the term of the Listing Agreement, and (ii) the agreed purchase price is paid to the estate in good funds or otherwise realized by the Estate.

10.    Dorothy Harmon has expended time and has incurred costs in connection with its representation of the Estate in this transaction. Dorothy Harmon has personally inspected the Property and prepared a comparative market value analysis for the Property, shown the Property to prospective Purchasers, listed the Property in applicable multiple listing services and otherwise acted as the agent of the Estate in connection with the proposed sale.

11.    Trustee requests that this Court allow and authorize trustee to pay a real estate broker's commission of  $8,700.00  to be paid to Dorothy Harmon as final compensation for her services to the Estate, representing 6 % of the Purchase Price for the Property. The proposed commission to Dorothy Harmon is the amount payable pursuant to the Listing Agreement and is customary in the real estate industry for transactions of this type. The commission to be paid represents the full and final compensation which will be paid to Dorothy Harmon in connection with her services as a real estate broker for the estate.

4

### Payment of Liens

12.    CitiMortgage, Inc.  asserts a mortgage lien to secure a note with an approximate balance due of $93,000.00 which Trustee does not dispute.  Trustee requests that the Court allow and authorize Trustee to pay CitiMortgage the amount due on their mortgage lien from the proceeds of sale.  Payment of the CitiMortgage claim will permit the estate to avoid the continuing accrual of interest and fees with regard to this fully secure claim.

### Request to Pay of Homestead Exemption

13.    Trustee requests that this Court approve the payment to the Debtor of a homestead exemption in the amount of $15,000.00.  Trustee is informed and believes that Debtor occupies and resides in the Property as her primary residence and has properly claimed the Illinois homestead exemption under applicable law in her Schedule C filed with this Court.

### Payment Of Closing Costs

14.    Trustee will incur customary closing costs, including costs for recording fees, title charges, payment of water charges, transfer taxes and title insurance charges in connection with the closing of the sale of the Property for which the estate is obligated pursuant to the Sales Contract.  In addition, any real estate taxes which remain unpaid and the prorated portion of real estate taxes which have been assessed but are  not yet due and payable must be paid or credited to the Purchaser at the closing of the sale of the Property.  All such charges are either administrative expenses of this estate or are amounts secured by liens against the Property which must be paid at closing in order to deliver good title to Purchaser and comply with the Sales Contract.  Accordingly, Trustee

5

requests that he be authorized to pay or permit a credit against the Purchase Price for all customary closing costs and real estate taxes at the closing of the sale of the Property from the proceeds of sale.

### Notice to Creditors

15.   Trustee has provided 22 days notice of the hearing on this Motion to the Debtor, all creditors and the United States Trustee in the form attached hereto as Exhibit B, in accordance with Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, Joseph A. Baldi, as trustee of the estate of Shirley A. White, debtor, requests this Court to enter an order:

a)   Authorizing Trustee to sell the Estate's right, title and interest in the Property to Purchaser for $145,000.00 pursuant to the terms of the Sales Contract;

b)   Authorizing Trustee to sell the Property to Purchasers free and clear of all liens, claims and interest, with all liens, claims and interests to attach to the proceeds of sale;

c)   Authorizing Trustee to execute any and all documents necessary or proper to close the sale of the Property and transfer title to Purchaser;

d)   Allowing and Authorizing Trustee to pay a real estate broker's commission of $8,700.00 to Dorothy Harmon of Remax Preferred Properties from the proceeds of sale at closing as final compensation for her services to the Estate as a real estate broker;

e)   Authorizing Trustee to pay from or provide a credit against the proceeds of sale for the amounts due and owing on account of the CitiMortgage mortgage,

6

real estate taxes and all other customary costs of sale for which Trustee is responsible under the terms of the Sales Contract;

f)   Authorizing Trustee to pay from the proceeds of sale at closing the sum of $15,000.00 to Debtor representing the homestead exemption due to Debtor from the sale of the Property;

g)   Authorizing Trustee, after payment of the amounts set forth above, to deposit the remaining net proceeds in an Estate bank account to be disbursed on further order of court; and

h)   For such other and further relief as this Court deems proper.

Dated:  September 24, 2007

Respectfully submitted,

Joseph A. Baldi, as trustee of the Estate of Shirley A. White, debtor

By: _____/s/_____
Joseph A. Baldi, one of his attorneys

Joseph A. Baldi
Attorney ID No. 00100145
Elizabeth C. Berg
Attorney ID No. 6200886
Joseph A. Baldi & Associates, P.C.
Suite 1500
19 South LaSalle Street
Chicago, Illinois  60603
(312) 726-8150

7

SEP-06-2007 17:34 From:1CHUMFHX          312280856?          To:Fax          P.3/13

 **MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 4.0** 

REALTOR

1. **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".
2.
3. Buyer(s) *(Please Print)* **MARQUITA CURRY**
4.
5. Seller(s) *(Please Print)* **OWNER OF RECORD**
6.
7. If Dual Agency applies, complete Optional Paragraph 41).
8.
9. **2. THE REAL ESTATE:** Real Estate shall be defined to include the Real Estate and all improvements thereon. Seller
10. agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate with the approximate lot size or acreage
11. of **PER SURVEY**        commonly known as: **5254 W. POLK, CHICAGO, IL, 60644**
12.                                                          Address                    City          State    Zip
13. **COOK**
14. County            Unit # (if applicable)          Permanent Index Number(s) of Real Estate
15.
16. If Condo/Coop/Townhome Parking is Included: # of space(s) ____; identified as Space(s) #_____;
17. *(check type)*   ☐ deeded space; ☐ limited common element; ☐ assigned space
18.
19. **3. FIXTURES AND PERSONAL PROPERTY:** All of the fixtures and personal property stated herein are owned by
20. Seller and to Seller's knowledge are in operating condition on the Date of Acceptance, unless otherwise stated herein.
21. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing and well systems together with the
22. following items of personal property by Bill of Sale at Closing: *[Check or enumerate applicable items]*

| | | |
|---|---|---|
| __ Refrigerator | ✓ All Tacked Down Carpeting | __ Fireplace Screen(s)/Door(s)/Grate(s) | ✓ Central Air Conditioning |
| __ Oven/Range/Stove | __ All Window Treatments & Hardware | __ Fireplace Gas Logs | __ Electronic or Media Air Filter |
| __ Microwave | ✓ Built-in or Attached Shelving | ✓ Existing Storms & Screens | __ Central Humidifier |
| __ Dishwasher | ✓ Smoke Detector(s) | ✓ Security System(s) (owned) | __ Sump Pump(s) |
| __ Garbage Disposal | ✓ Ceiling Fan(s) | __ Intercom System | __ Water Softener (owned) |
| __ Trash Compactor | __ TV Antenna System | __ Central Vac & Equipment | __ Outdoor Shed |
| __ Washer | __ Window Air Conditioner(s) | ✓ Electronic Garage Door Opener(s) | __ Attached Gas Grill |
| __ Dryer | __ Planted Vegetation | with all Transmitter(s) | ✓ Light Fixtures, as they exist |
| __ Satellite Dish | __ Outdoor Playsets | __ Invisible Fence System, Collar(s) and Box | __ Home Warranty  ☐ |

32. Other items included: **N/A**
33. Items NOT included: **N/A**
34. Seller warrants to Buyer that all fixtures, systems and personal property included in this Contract shall be in operating
35. condition at possession, except: _____
36. A system or item shall be deemed to be in operating condition if it performs the function for which it is intended,
37. regardless of age, and does not constitute a threat to health or safety.
38.
39. **4. PURCHASE PRICE:** Purchase Price of $**145,000.00**                    shall be paid as follows: Initial
40. earnest money of $ **1,000.00**          by ☑ check, ☐ cash OR ☐ note due on _____, 20___,
41. to be increased to a total of $**N/A**          by **N/A**          , 20 **N/A** . The earnest money and the
42. original of this Contract shall be held by the Listing Company, as "Escrowee", in trust for the mutual benefit of the
43. Parties. The balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing by wire transfer of funds,
44. or by certified, cashier's, mortgage lender's or title company's check (provided that the title company's check is
45. guaranteed by a licensed title insurance company).
46.
47. **5. CLOSING:** Closing or escrow payout shall be on **OCTOBER 31**          , 20 **07** , or at such time as
48. mutually agreed upon by the Parties in writing. Closing shall take place at the title company escrow office situated
49. geographically nearest the Real Estate or as shall be agreed mutually by the Parties.
50.
51. **6. POSSESSION:** Unless otherwise provided in Paragraph 39, Seller shall deliver possession to Buyer at the time of
52. Closing. Possession shall be deemed to have been delivered when Seller has vacated the Real Estate and delivered keys
53. to the Real Estate to Buyer or to Listing Office.

| Buyer Initial МС | Buyer Initial МО | Seller Initial JB  L | Seller Initial |
|---|---|---|---|
| Address **5254 W. POLK, CHICAGO, IL, 60644** | | | |

Page 1 of 11

**Exhibit A**

0/0          P. 3          SOIS-98L-069          Exhibit A Hae          Lindetta R. Haer          5Zs:II LO LO des

SEP-06-2007 17:34 From:ICHOM-HX          312280805c          To:Fax          P.4/13

54  **7. RESIDENTIAL REAL ESTATE AND LEAD-BASED PAINT DISCLOSURES:** If applicable, prior to signing
55  this Contract, Buyer *[check one]* ☐ has ☑ has not received a completed Illinois Residential Real Property Disclosure
56  Report, *[check one]* ☐ has ☑ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home";
57  *[check one]* ☐ has ☑ has not received a Lead-Based Paint Disclosure.
58
59  **8. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants, Special
60  Service Area tax for the year of closing only, utilities, water and sewer, and homeowner or condominium association
61  fees (and Master/Umbrella Association fees, if applicable). Accumulated reserves of a Homeowner/Condominium
62  Association(s) are not a proratable item. Seller represents that as of the Date of Acceptance Homeowner/Condominium
63  Association(s) fees are $ **N/A** _____ per _____ (and, if applicable, fees for a Master/Umbrella Association are
64  $ **N/A** _____ per _____). Seller agrees to pay prior to or at Closing any special assessments (governmental or
65  association) confirmed prior to Date of Acceptance. Installments due after the year of Closing for a Special Service Area
66  shall not be a proratable item. The general Real Estate taxes shall be prorated as of the date of Closing based on
67  **110** % of the most recent ascertainable full year tax bill. All prorations shall be final as of Closing, except as
68  provided in Paragraph 20. If the amount of the most recent ascertainable tax bill reflects a homeowner, senior citizen or
69  other exemption, Seller has submitted or will submit in a timely manner all necessary documentation to the Assessor's
70  Office, before or after Closing, to preserve said exemption(s).
71
72  **9. ATTORNEY REVIEW:** The respective attorneys for the Parties may approve, disapprove, or make modifications to
73  this Contract, other than stated Purchase Price, within five (5) Business Days after the Date of Acceptance. Disapproval
74  or modification of this Contract shall not be based solely upon stated Purchase Price. Any notice of disapproval or
75  proposed modification(s) by any Party shall be in writing. **If written notice is not served within the time specified, this**
76  **provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect. If prior to**
77  **the expiration of ten (10) Business Days after Date of Acceptance, written agreement is not reached by the Parties**
78  **with respect to resolution of proposed modifications, then this Contract shall be null and void.**
79
80  **10. PROFESSIONAL INSPECTIONS:** Buyer may secure at Buyer's expense (unless otherwise provided by
81  governmental regulations) a home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless
82  separately waived), and/or wood destroying insect infestation inspection(s) of said Real Estate by one or more licensed
83  or certified inspection service(s). Buyer shall serve written notice upon Seller or Seller's attorney of any defects
84  disclosed by the inspection(s) which are unacceptable to Buyer, together with a copy of the pertinent page(s) of the
85  report(s), within five (5) Business Days (ten (10) calendar days for a lead-based paint and/or lead-based paint hazard
86  inspection) after Date of Acceptance. **If written notice is not served within the time specified, this provision shall be**
87  **deemed waived by the Parties and this Contract shall remain in full force and effect. If prior to the expiration of**
88  **ten (10) Business Days after Date of Acceptance, written agreement is not reached by the Parties with respect to**
89  **resolution of inspection issues, then this Contract shall be null and void.** The home inspection shall cover **only**
90  major components of the Real Estate, including but not limited to, central heating system(s), central cooling system(s),
91  plumbing and well system, electrical system, roof, walls, windows, ceilings, floors, appliances and foundation. A major
92  component shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of
93  age, and does not constitute a threat to health or safety. The fact that a functioning component may be at the end of its
94  useful life shall not render such component defective for the purpose of this paragraph. Buyer shall indemnify Seller
95  and hold Seller harmless from and against any loss or damage caused by the acts or negligence of Buyer or any person
96  performing any inspection(s). **Buyer agrees minor repairs and routine maintenance items are not a part of this**
97  **contingency.** If radon mitigation is performed, Seller shall pay for a retest.
98
99  **11. MORTGAGE CONTINGENCY:** Seller *[check one]* ☐ has ☑ has not received a completed Loan Status
100 Disclosure (see page 11). This Contract is contingent upon Buyer obtaining a firm written mortgage commitment
101 (except for matters of title and survey or matters totally within Buyer's control) on or before **OCTOBER 5** _____ , 20 **07**
102 for a *[choose one]* ☐ fixed ☑ adjustable; *[choose one]* ☐ conventional ☐ FHA/VA ☐ other_____

| *Buyer Initial* **MO** | *Buyer Initial* **MO** | *Seller Initial* **b** | **t** | *Seller Initial* |
|---|---|---|---|---|
| *Address* **5254 W. POLK, CHICAGO, IL, 60644** | | | | |

Page 2 of 11

SEP-06-2007 17:35 From: ICHUMFHX        312680562        To:Fax        P.5/13

103  loan of $ MAX MTG AMT        or such lesser amount as Buyer elects to take, plus private mortgage insurance (PMI), if
104  required. The interest rate (initial rate, if applicable) shall not exceed  9  % per annum, amortized over not less than
105  30    years. Buyer shall pay loan origination fee and/or discount points not to exceed  1    % of the loan amount.
106  Buyer shall pay the cost of application, usual and customary processing fees and closing costs charged by lender. (If
107  FHA/VA, complete Paragraph 35.) (If closing cost credit, complete Paragraph 33.) Buyer shall make written loan
108  application within five (5) Business Days after the Date of Acceptance. Failure to do so shall constitute an act of
109  Default under this Contract. If Buyer, having applied for the loan specified above, is unable to obtain such loan
110  commitment and serves written notice to Seller within the time specified, this Contract shall be null and void. If
111  written notice of inability to obtain such loan commitment is not served within the time specified, Buyer shall be
112  deemed to have waived this contingency and this Contract shall remain in full force and effect. Unless otherwise
113  provided in Paragraph 31, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing
114  real estate. Buyer shall be deemed to have satisfied the financing conditions of this paragraph if Buyer obtains a loan
115  commitment in accordance with the terms of this paragraph even though the loan is conditioned on the sale and/or
116  closing of Buyer's existing real estate. If Seller at Seller's option and expense, within thirty (30) days after Buyer's
117  notice, procures for Buyer such commitment or notifies Buyer that Seller will accept a purchase money mortgage upon
118  the same terms, this Contract shall remain in full force and effect. In such event, Seller shall notify Buyer within five (5)
119  Business Days after Buyer's notice of Seller's election to provide or obtain such financing, and Buyer shall furnish to
120  Seller or lender all requested information and shall sign all papers necessary to obtain the mortgage commitment and to
121  close the loan.
122
123  **12. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer's securing evidence of insurability for an
124  Insurance Service Organization Homeowner 3 (ISOHO3) or applicable equivalent policy at Preferred Premium rates
125  within ten (10) Business Days after Date of Acceptance.  If Buyer is unable to obtain evidence of insurability and
126  serves written notice with proof of same to Seller within the time specified, this Contract shall be null and void. If
127  written notice is not served within the time specified, Buyer shall be deemed to have waived this contingency and
128  this Contract shall remain in full force and effect.
129
130  **13. FLOOD INSURANCE:** Unless previously disclosed in the Illinois Residential Real Property Disclosure Report,
131  Buyer shall have the option to declare this Contract null and void if the Real Estate is located in a special flood hazard
132  area which requires Buyer to carry flood insurance.  If written notice of the option to declare this Contract null and
133  void is not given to Seller within ten (10) Business Days after Date of Acceptance or within the term specified in
134  Paragraph 11 (whichever is later), Buyer shall be deemed to have waived such option and this Contract shall
135  remain in full force and effect. Nothing herein shall be deemed to affect any rights afforded by the Residential Real
136  Property Disclosure Act.
137
138  **14. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** (If applicable) The Parties agree that the terms
139  contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any conflicting terms.
140    (a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions of
141        the Declaration of Condominium/Covenants, Conditions and Restrictions and all amendments; public and utility
142        easements including any easements established by or implied from the Declaration of Condominium/Covenants,
143        Conditions and Restrictions or amendments thereto; party wall rights and agreements; limitations and conditions
144        imposed by the Condominium Property Act; installments due after the date of Closing of general assessments
145        established pursuant to the Declaration of Condominium/Covenants, Conditions and Restrictions.
146    (b) Seller shall be responsible for all regular assessments due and levied prior to Closing and for all special
147        assessments confirmed prior to the Date of Acceptance.
148    (c) Buyer has, within five (5) Business Days from the Date of Acceptance, the right to demand from Seller items as
149        stipulated by the Illinois Condominium Property Act, if applicable, and Seller shall diligently apply for same.
150        This Contract is subject to the condition that Seller be able to procure and provide to Buyer, a release or waiver
151        of any option of first refusal or other pre-emptive rights of purchase created by the Declaration of
152        Condominium/Covenants, Conditions and Restrictions within the time established by the Declaration of
153        Condominium/Covenants, Conditions and Restrictions. In the event the Condominium Association requires

Buyer Initial _MK_      Buyer Initial _VK_      Seller Initial _____  _____ Seller Initial_____
Address **5254 W. POLK, CHICAGO, IL, 60644**

SEP-06-2007 17:36 From:ICHUMFHX            3122808062           To:Fax            P.6/13

154   personal appearance of Buyer and/or additional documentation, Buyer agrees to comply with same.
155   (d) In the event the documents and information provided by Seller to Buyer disclose that the existing improvements
156   are in violation of existing rules, regulations or other restrictions or that the terms and conditions contained
157   within the documents would unreasonably restrict Buyer's use of the premises or would result in increased
158   financial obligations unacceptable to Buyer in connection with owning the Real Estate, then Buyer may
159   **declare this Contract null and void by giving Seller written notice within five (5) Business Days after the**
160   **receipt of the documents and information required by Paragraph 14 (c), listing those deficiencies which**
161   **are unacceptable to Buyer. If written notice is not served within the time specified, Buyer shall be deemed**
162   **to have waived this contingency, and this Contract shall remain in full force and effect.**
163   (e) Seller shall not be obligated to provide a condominium survey.
164   (f) Seller shall provide a certificate of insurance showing Buyer (and Buyer's mortgagee, if any) as an insured.
165
166   **15. THE DEED**: Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
167   merchantable title to the Real Estate by recordable general Warranty Deed, with release of homestead rights, (or the
168   appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
169   otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to: general
170   real estate taxes not due and payable at the time of Closing, covenants, conditions, and restrictions of record, building
171   lines and easements, if any, so long as they do not interfere with the current use and enjoyment of the Real Estate.
172
173   **16. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
174   customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
175   commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a title
176   company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance, subject only to
177   items listed in Paragraph 15. The requirement of providing extended coverage shall not apply if the Real Estate is vacant
178   land. The commitment for title insurance furnished by Seller will be conclusive evidence of good and merchantable title
179   as therein shown, subject only to the exceptions therein stated. If the title commitment discloses unpermitted exceptions,
180   or if the Plat of Survey shows any encroachments which are not acceptable to Buyer, then Seller shall have said
181   exceptions or encroachments removed, or have the title insurer commit to insure against loss or damage that may be
182   caused by such exceptions or encroachments. If Seller fails to have unpermitted exceptions waived or title insured over
183   prior to Closing, Buyer may elect to take the title as it then is, with the right to deduct from the Purchase Price prior
184   encumbrances of a definite or ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title covering
185   the date of Closing, and shall sign any other customary forms required for issuance of an ALTA Insurance Policy
186
187   **17. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
188   condominium (see Paragraph 14) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of Survey
189   dated not more than six (6) months prior to the date of Closing, prepared by an Illinois Professional Land Surveyor,
190   showing any encroachments, measurements of all lot lines, all easements of record, building set back lines of record,
191   fences, all buildings and other improvements on the Real Estate and distances therefrom to the nearest two lot lines. In
192   addition, the survey to be provided shall be a boundary survey conforming to the current requirements of the appropriate
193   state regulatory authority. The survey shall show all corners staked, flagged, or otherwise monumented. The survey shall
194   have the following statement prominently appearing near the professional land surveyor seal and signature: "This
195   professional service conforms to the current Illinois minimum standards for a boundary survey". A Mortgage Inspection,
196   as defined, is not a boundary survey, and is not acceptable.
197
198   **18. ESCROW CLOSING:** At the election of either Party, not less than **five (5)** Business Days prior to the Closing, this
199   sale shall be closed through an escrow with the lending institution or the title company in accordance with the provisions
200   of the usual form of Deed and Money Escrow Agreement, as agreed upon between the Parties, with provisions inserted
201   in the Escrow Agreement as may be required to conform with this Contract. The cost of the escrow shall be paid by the
202   Party requesting the escrow. If this transaction is a cash purchase (no mortgage is secured by Buyer), the Parties shall
203   share the title company escrow closing fee equally.
204

| Buyer Initial _____ | Buyer Initial _____ | Seller Initial _____ | Seller Initial _____ |
| Address 5254 W. POLK, CHICAGO, IL, 60644 | | | |

Page 4 of 11

0r0    9.d    S01E-98L-0E9    **Exhibit A**    295:11 L0 L0 deS
                                        Lindetta A. Harris

SEP-05-2007 17:37 From:1CHUMFAX          3122888562          To:Fax          P.7/13

205 **19. DAMAGE TO REAL ESTATE PRIOR TO CLOSING:** If, prior to delivery of the deed, the Real Estate shall be
206 destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by condemnation, then Buyer shall
207 have the option of either terminating this Contract (and receiving a refund of earnest money) or accepting the Real
208 Estate as damaged or destroyed, together with the proceeds of the condemnation award or any insurance payable as a
209 result of the destruction or damage, which gross proceeds Seller agrees to assign to Buyer and deliver to Buyer at
210 closing. Seller shall not be obligated to repair or replace damaged improvements. The provisions of the Uniform Vendor
211 and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract, except as modified in this paragraph.
212

213 **20. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
214 the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in escrow
215 with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at Closing. When
216 the exact amount of the taxes prorated under this Contract can be ascertained, the taxes shall be prorated by Seller's
217 attorney at the request of either Party, and Seller's share of such tax liability after reproration shall be paid to Buyer from
218 the escrow funds and the balance, if any, shall be paid to Seller. If Seller's obligation after such reproration exceeds the
219 amount of the escrow funds, Seller agrees to pay such excess promptly upon demand.
220

221 **21. SELLER REPRESENTATIONS:** Seller represents that Seller has not received written notice from any
222 Governmental body or Homeowner Association regarding (a) zoning, building, fire or health code violations that have
223 not been corrected; (b) any pending rezoning; (c) any pending condemnation or eminent domain proceeding; or (d) a
224 proposed or confirmed special assessment and/or Special Service Area affecting the Real Estate. Seller represents,
225 however, that, in the case of a special assessment and/or Special Service Area, the following applies:

226        1. There *[check one]* is ☐ is not ☐ a proposed or pending unconfirmed special assessment affecting the Real
227           Estate not payable by Seller after date of Closing.
228        2. The Real Estate *[check one]* is ☐ is not ☐ located within a Special Service Area, payments for which will
229           not be the obligation of Seller after date of Closing.

230 If any of the representations contained herein regarding non-Homeowner Association special assessment or
231 Special Service Area are unacceptable to Buyer, Buyer shall have the option to declare this Contract null and
232 void. If written notice of the option to declare this Contract null and void is not given to Seller within ten (10)
233 Business Days after Date of Acceptance or within the term specified in Paragraph 11 (whichever is later), Buyer
234 shall be deemed to have waived such option and this Contract shall remain in full force and effect. Seller further
235 represents that Seller has no knowledge of boundary line disputes, easements or claims of easement not shown by the
236 public records, any hazardous waste on the Real Estate or any improvements for which the required permits were not
237 obtained. Seller represents that there have been no improvements to the Real Estate which are not either included in full
238 in the determination of the most recent real estate tax assessment or which are eligible for home improvement tax
239 exemption.
240

241 **22. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
242 condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real Estate at
243 Seller's expense before possession. Buyer shall have the right to inspect the Real Estate, fixtures and personal property
244 prior to possession to verify that the Real Estate, Improvements and included personal property are in substantially the
245 same condition as of the Date of Acceptance, normal wear and tear excepted.
246

247 **23. GOVERNMENTAL COMPLIANCE:** Parties agree to comply with the reporting requirements of the applicable
248 sections of the Internal Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.
249

250 **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal holidays.
251 Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.
252

253 **25. FACSIMILE:** Facsimile signatures shall be sufficient for purposes of executing, negotiating, and finalizing this
254 Contract.

| _Buyer Initial_ ✓)](){} | _Buyer Initial_ ✓)](){} | ___ _Seller Initial_ ᘜᗷ | _Seller Initial_ ___ |
|---|---|---|---|
| _Address_ **5254 W. POLK, CHICAGO, IL, 60644** | | | |

Page 5 of 11

**Exhibit A**

255 **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
256 Contract may be terminated by either Party, the following shall be deemed incorporated: "and earnest money refunded to
257 Buyer upon written direction of the Parties to Escrowee or upon entry of an order by a court of competent jurisdiction".
258

259 **27. NOTICE:** All Notices, except as provided otherwise in Paragraph 31(C) (2), shall be in writing and shall be served
260 by one Party or attorney to the other Party or attorney. Notice to any one of a multiple person Party shall be sufficient
261 Notice to all. Notice shall be given in the following manner:
262      (a) By personal delivery of such Notice; or
263      (b) By mailing of such Notice to the addresses recited herein by regular mail and by certified mail, return receipt
264           requested. Except as otherwise provided herein, Notice served by certified mail shall be effective on the date of
265           mailing; or
266      (c) By sending facsimile transmission. Notice shall be effective as of date and time of facsimile transmission,
267           provided that the Notice transmitted shall be sent on Business Days during Business Hours. In the event fax
268           Notice is transmitted during non-business hours, the effective date and time of Notice is the first hour of the next
269           Business Day after transmission; or
270      (d) By sending e-mail transmission. Notice shall be effective as of date and time of e-mail transmission, provided
271           that the Notice transmitted shall be sent during Business Hours, and provided further that the recipient provides
272           written acknowledgment to the sender of receipt of the transmission (by e-mail, facsimile, regular mail or
273           commercial overnight delivery). In the event e-mail Notice is transmitted during non-business hours, the
274           effective date and time of Notice is the first hour of the next Business Day after transmission; or
275      (e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
276           following deposit with the overnight delivery company.
277

278 **28. PERFORMANCE:** Time is of the essence of this Contract. In any action with respect to this Contract, the Parties
279 are free to pursue any legal remedies at law or in equity and the prevailing Party in litigation shall be entitled to collect
280 reasonable attorney fees and costs from the non-Prevailing Party as ordered by a court of competent jurisdiction. There
281 shall be no disbursement of earnest money unless Escrowee has been provided written agreement from Seller and Buyer.
282 Absent an agreement relative to the disbursement of earnest money within a reasonable period of time, Escrowee may
283 deposit funds with the Clerk of the Circuit Court by the filing of an action in the nature of interpleader. Escrowee shall
284 be reimbursed from the earnest money for all costs, including reasonable attorney fees, related to the filing of the
285 interpleader action. Seller and Buyer shall indemnify and hold Escrowee harmless from any and all conflicting claims
286 and demands arising under this paragraph.
287

288 **29. CHOICE OF LAW/GOOD FAITH:** All terms and provisions of this Contract including, but not limited to, the
289 Attorney Review and Professional Inspection paragraphs, shall be governed by the laws of the State of Illinois and are
290 subject to the covenant of good faith and fair dealing implied in all Illinois contracts.
291

292 **30. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS selected for use and
293 initialed by the Parties which are contained in the following paragraphs and attachments, if any: _____
294 Bankruptcy Rider attached to Contract
295

296 **THE FOLLOWING OPTIONAL PROVISIONS APPLY ONLY IF INITIALED BY ALL PARTIES**
297

298      NMR.          **31. SALE OF BUYER'S REAL ESTATE:**
299      Initials
300 (A) REPRESENTATIONS ABOUT BUYER'S REAL ESTATE: Buyer represents to Seller as follows:
301      (1) Buyer owns real estate commonly known as (address): _____
302
303      (2) Buyer *[check one]* ☐ has ☐ has not entered into a contract to sell said real estate. If Buyer has entered into a contract to
304           sell said real estate, that contract:
305           (a) *[check one]* ☐ is ☐ is not subject to a mortgage contingency.

| Buyer Initial *NM* | Buyer Initial *NM* | Seller Initial *JMB* | Seller Initial ____ |
|---|---|---|---|
| Address **5254 W. POLK, CHICAGO, IL, 60644** | | | |

Page 6 of 11

**Exhibit A**

SEP-06-2007 17:38 From:ICHUM-RX          3122880562          To:Fax          P.9/13

306     (b) *[check one]* ☐ is ☐ is not subject to a real estate sale contingency.

307     (c) *[check one]* ☐ is ☐ is not subject to a real estate closing contingency.

308     (3) Buyer *[check one]* ☐ has ☐ has not listed said real estate for sale with a licensed real estate broker and in a local multiple
309         listing service.

310     (4) If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing service,
311         Buyer *[check one]*

312         (a) ☐ Shall list said real estate for sale with a licensed real estate broker who will place it in a local multiple listing
313             service within five (5) Business Days after the Date of Acceptance.
314             For information only: Broker: _____
315             Broker's Address: _____ Phone: _____

316         (b) ☐ Does not intend to list said real estate for sale.

317 **(B) CONTINGENCIES BASED UPON SALE AND/OR CLOSE OF BUYER'S REAL ESTATE:**

318     (1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that is in full force
319         and effect as of _____, 20__ . Such contract shall provide for a closing date not later than the Closing
320         Date set forth in this Contract. If written notice is served on or before the date set forth in this subparagraph that
321         Buyer has not procured a contract for the sale of Buyer's real estate, this Contract shall be null and void. If written
322         notice that Buyer has not procured a contract for the sale of Buyer's real estate is not served on or before the close
323         of business on the date set forth in this subparagraph, Buyer shall be deemed to have waived all contingencies
324         contained in this Paragraph 31, and this Contract shall remain in full force and effect. (If this paragraph is used, then
325         the following paragraph must be completed.)

326     (2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 31 (B) (1) and that
327         contract is in full force and effect, or has entered into a contract for sale of Buyer's real estate prior to the execution of this
328         Contract, this Contract is contingent upon Buyer closing the sale of Buyer's real estate on or before
329         _____, 20__ . If written notice that Buyer has not closed the sale of Buyer's real estate is
330         served before the close of business on the next Business Day after the date set forth in the preceding sentence, this
331         Contract shall be null and void. If written notice is not served as described in the preceding sentence, Buyer shall be
332         deemed to have waived all contingencies contained in this Paragraph 31, and this Contract shall remain in full force
333         and effect.

334     (3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in Paragraph 31 (B) (1)
335         (or after the date of this Contract if no date is set forth in Paragraph 31 (B) (1)), Buyer shall, within three (3) Business Days
336         of such termination, notify Seller of said termination. Unless Buyer, as part of said notice, waives all contingencies in
337         Paragraph 31 and complies with Paragraph 31 (D), this Contract shall be null and void as of the date of notice. If
338         written notice as required by this subparagraph is not served within the time specified, Buyer shall be in default
339         under the terms of this Contract.

340 **(C) SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency, Seller
341 has the right to continue to show the Real Estate and offer it for sale subject to the following:

342     (1) If Seller accepts another bona fide offer to purchase the Real Estate while the contingencies expressed in subparagraph (B)
343         are in effect, Seller shall notify Buyer in writing of same. Seller shall then have _____ hours after Seller gives such
344         notice to waive the contingencies set forth in Paragraph 31 (B), subject to Paragraph 31 (D).

345     (2) Seller's notice to Buyer (commonly referred to as a "kick-out" notice) shall be served on Buyer, not Buyer's
346         attorney or Buyer's real estate agent. Courtesy copies of such "kick-out" notice should be sent to Buyer's attorney and
347         real estate agent, if known. Failure to provide such courtesy copies shall not render notice invalid. Notice to any one of a
348         multiple-person Buyer shall be sufficient notice to all Buyers. Notice for the purpose of this subparagraph only shall be
349         served upon Buyer in the following manner:

350         (a) By personal delivery of such notice effective at the time and date of personal delivery; or

351         (b) By mailing of such notice to the addresses recited herein for Buyer by regular mail and by certified mail. Notice
352             served by regular mail and certified mail shall be effective at 10:00 A.M. on the morning of the second day following
353             deposit of notice in U.S. Mail; or

354         (c) By commercial overnight delivery (e.g., FedEx). Such notice shall be effective upon delivery or at 4:00 P.M. Chicago
355             time on the next delivery day following deposit with the overnight delivery company, whichever first occurs.

356     (3) If Buyer complies with the provisions of Paragraph 31 (D) then this Contract shall remain in full force and effect.

357     (4) If the contingencies set forth in Paragraph 31 (B) are NOT waived in writing within said time period by Buyer, this
358         Contract shall be null and void.

359     (5) Except as provided in subsections to subparagraph (C) (2) above, all notices shall be made in the manner provided by

| Buyer Initial _MO_   Buyer Initial _MO_ | Seller Initial _____   Seller Initial _____ |
| Address **5254 W. POLK, CHICAGO, IL, 60644** | |

Page 7 of 11

SEP-06-2007 17:39 From:1CHUMFAX          3122888562          To:Fax          P.16/13

360      Paragraph 27 of this Contract.
361      (6) Buyer waives any ethical objection to the delivery of notice under this paragraph by Seller's attorney or representative.
362      (D) WAIVER OF PARAGRAPH 31 CONTINGENCIES: Buyer shall be deemed to have waived the contingencies in Paragraph
363   31 (B) when Buyer has delivered written waiver and deposited with the Escrowee the additional sum of $_____
364   earnest money within the time specified. If Buyer fails to deposit the additional earnest money within the time specified, the
365   waiver shall be deemed ineffective and this Contract shall be null and void;
366      (E) BUYER COOPERATION REQUIRED: Buyer authorizes Seller or Seller's agent to verify representations contained in
367   Paragraph 31 at any time, and Buyer agrees to cooperate in providing relevant information.
368
369  ___ ___ ___ ___ **32. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered
370   into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before
371   _____, 20____. In the event the prior contract is not cancelled within the time specified, this Contract shall be
372   null and void. Notice to the purchaser under the prior contract should not be served until after Attorney Review and
373   Professional Inspections provisions of this Contract have expired, been satisfied or waived.
374
375  ___ ___ ___ ___ **33. CLOSING COST CREDIT:** Provided Buyer's lender permits such credit to show on the HUD-1
376   Settlement Statement, and if not, such lesser amount as the lender permits, Seller agrees to credit to Buyer
377   $_____ at closing.
378
379  ___ ___ ___ ___ **34. INTEREST BEARING ACCOUNT:** Earnest money (with a completed W-9 and other required forms),
380   shall be held in a federally insured interest bearing account at a financial institution designated by Escrowee. All interest earned on
381   the earnest money shall accrue to the benefit of and be paid to Buyer. Buyer shall be responsible for any administrative fee (not
382   to exceed $100) charged for setting up the account. In anticipation of Closing, the Parties direct Escrowee to close the account no
383   sooner than ten (10) Business Days prior to the anticipated Closing date.
384
385  ___ ___ ___ ___ **35. VA OR FHA FINANCING:** If Buyer is seeking VA or FHA financing, this provision shall be applicable;
386   Buyer may terminate this Contract if the Purchase Price set forth herein exceeds the appraised value of the Real Estate, as
387   determined by the Veterans Administration (VA) or the Federal Housing Administration (FHA). However, Buyer shall have the
388   option of proceeding with this Contract without regard to the amount of the appraised valuation. If VA, the Funding Fee, or if FHA,
389   the Mortgage Insurance Premium (MIP) paid by Buyer and *[check one]* ☐ shall ☐ shall not be added to the mortgage loan
390   amount. Seller agrees to pay additional miscellaneous expenses required by lender not to exceed $200.00. Required FHA or VA
391   amendments shall be attached to this Contract. It is expressly agreed that notwithstanding any other provisions of this Contract,
392   Buyer shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest
393   money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA requirements, a written statement by the
394   Federal Housing Commissioner setting forth the appraised value of the property (excluding Closing costs) of not less than
395   $_____. Buyer shall have the privilege and option of proceeding with the consummation of the Contract
396   without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage
397   the Department of Housing and Urban Development will insure/guarantee. HUD and the mortgagee do not warrant the value nor the
398   condition of the property. Buyer should satisfy himself/herself that the price and condition of the property are acceptable.
399
400  ___ ___ ___ ___ **36. INTERIM FINANCING:** This Contract is contingent upon Buyer obtaining a written commitment for
401   interim financing on or before _____, 20___ in the amount of $_____. If Buyer is unable
402   to secure the interim financing commitment and gives written notice to Seller within the time specified, this Contract shall be
403   null and void. If written notice is not served within the time specified, this provision shall be deemed waived by the Parties
404   and this Contract shall remain in full force and effect.
405
406  ___ ___ ___ ___ **37. WELL AND/OR SEPTIC/SANITARY INSPECTIONS:** Seller shall obtain at Seller's expense a well
407   water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria and nitrate test (and
408   lead test for FHA loans) and/or a septic report from the applicable County Health Department, a Licensed Environmental Health
409   Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to Closing, stating that the well
410   and water supply and the private sanitary system are in proper operating condition with no defects noted. Seller shall remedy any
411   defect or deficiency disclosed by said report(s) prior to Closing; provided that if the cost of remedying a defect or deficiency and the
412   cost of landscaping together exceed $3,000.00, and if the Parties cannot reach agreement regarding payment of such additional cost,
413   then this Contract may be terminated by either Party. Additional testing recommended by the report shall be obtained at Seller's
414   expense. If the report recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with a

| Buyer Initial *AMO*  | Buyer Initial *AMO*  | Seller Initial _____ | Seller Initial _____ |
| --- | --- | --- | --- |
| Address 5254 W. POLK, CHICAGO, IL, 60644 | | | |

Sep 07 07 12:00p          Lindetta R. Hargis          630-786-3105          p.10          0/0          **Exhibit A**

SEP-05-2007 17:40 From:ICHURIFAX          3122505562          To:Fax          P.11/13

415 mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract prior to Closing. Seller shall
416 deliver a copy of such evaluation(s) to Buyer not less than one (1) Business Day prior to Closing.
417
418 _____ _____ 38. **WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 10, within ten
419 (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written report, dated not more
420 than six (6) months prior to the date of Closing, by a licensed inspector certified by the appropriate state regulatory authority in the
421 subcategory of termites, stating that there is no visible evidence of active infestation by termites or other wood destroying insects.
422 Unless otherwise agreed between the Parties, if the report discloses evidence of active infestation or structural damage, Buyer has
423 the option within five (5) Business Days of receipt of the report to proceed with the purchase or declare this Contract null and void.
424 This paragraph shall not apply to condominiums or to newly constructed property having been occupied for less than one year
425 following completion of construction.
426
427 _____ _____ 39. **POST-CLOSING POSSESSION:** Possession shall be delivered no later than 11:59 P.M. on the date that
428 is _____ days after the date of Closing ("the Possession Date"). Seller shall be responsible for all utilities, contents and liability
429 insurance, and home maintenance expenses until delivery of possession Seller shall deposit in escrow at Closing
430 with_____, [choose one] ☐ one percent (1%) of the Purchase Price or ☐ the sum of $ _____ to
431 be paid by Escrowee as follows: a) The sum of $ _____ per day for use and occupancy from and including the day after
432 Closing to and including the day of delivery of possession, if on or before the Possession Date; b) The amount per day equal to five
433 (5) times the daily amount set forth herein shall be paid for each day after the Possession Date specified in this paragraph that Seller
434 remains in possession of the real estate; and c) The balance, if any, to Seller after delivery of possession and provided that the terms
435 of Paragraph 22 have been satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession
436 escrow deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.
437
438 ____ _____ _____ 40. **"AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate and personal
439 property in its "As Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with
440 respect to the condition of the Real Estate and personal property have been made by Seller or Seller's Agent other than those known
441 defects, if any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller shall make the
442 property available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller and hold Seller harmless from and against
443 any loss or damage caused by the acts or negligence of Buyer or any person performing any inspection(s). In the event the
444 inspection reveals that the condition of the improvements, fixtures or personal property to be conveyed or transferred is
445 unacceptable to Buyer and Buyer so notifies Seller within five (5) Business Days after the Date of Acceptance, this Contract
446 shall be null and void. Failure of Buyer to notify Seller or to conduct said inspection operates as a waiver of Buyer's right to
447 terminate this Contract under this paragraph and this Contract shall remain in full force and effect. Buyer acknowledges the
448 provisions of Paragraph 10 and the warranty provisions of Paragraph 3 do not apply to this Contract.
449
450 ____ ___ ____ 41. **CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously consented to
451 _____ (Licensee) acting as a Dual Agent in providing brokerage services
452 on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the transaction referred to in this Contract.
453
454 ____ _____ 42. **SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real Estate by
455 _____, Buyer's specified party,
456 within five (5) Business Days after the Date of Acceptance. In the event Buyer's specified party does not approve of the Real
457 Estate and written notice is given to Seller within the time specified, this Contract shall be null and void. If written notice is
458 not served within the time specified, this provision shall be deemed waived by the Parties and this Contract shall remain in
459 full force and effect.
460
461 ____ ___ ____ 43. **MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the Parties
462 entering into a separate written agreement consistent with the terms and conditions set forth herein, and with such additional terms
463 as either Party may deem necessary, providing for one or more of the following: *(check applicable box(es))*
464 ☐  Assumption of Seller's Mortgage                    ☐  Vacant Land
465 ☐  Commercial/Investment/Starker Exchange            ☐  Articles Of Agreement for Deed or Purchase Money
466 ☐  Cooperative Apartment                                  Mortgage
       ☐  New Construction

| Buyer Initial YMD | Buyer Initial YMD | Seller Initial BAS | Seller Initial _____ |
| --- | --- | --- | --- |
| *Address* 5254 W. POLK, CHICAGO, IL, 60644 | | | |

Page 9 of 11

**Exhibit A**

Sep 07 07 12:01p    Lindetra A. Harris    630-786-3105    p.11    0v0

SEP-06-2007 17:41 From:1CHCMFAX          3122888562          To:Fax          P.12/13

467 THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL
468 PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS.
469
470 The Parties represent that text of this form has not been altered and is identical to the official Multi-Board Residential
471 Real Estate Contract 4.0.
472 _September 9,_ 20_07_          DATE OF ACCEPTANCE _September 10_ 20 0 7
473 Date of Offer                    _Joseph A Baldi, Trustee of Shirley A White_
474 _Marquita Curry_                 Seller Signature
475 Buyer Signature
476 _Marquita Curry_                 Seller Signature
477 Buyer Signature
478 MARQUITA CURRY                   OWNER OF RECORD _Joseph A. Baldi, Trustee_
479 Print Buyer(s) Name(s) [Required]   Print Seller(s) Name(s) [Required]
480 _Conrath Circle Apt 2n_          _19 s. LaSalle Street, Suite 1500_
481 Address                          Address
482 _Hillside_  _IL_  _60162_        _Chicago_  _Il_  _60603_
483 City        State    Zip         City       State    Zip
484
485 _312-777-8633_                   Phone                    E-mail
     Phone              E-mail
486                                  FOR INFORMATION ONLY  _RE/MAX PREFERRED BROKERS 60164_
487 CHARLES RUTENBURG REALTY  22029
488 Selling Office           MLS #   Listing Office  _DOROTHY M. HARMON 600683_   MLS #
489 LINDETTA A. HARRIS       227149
490 Buyer's Designated Agent  MLS #  Seller's Designated Agent _773 779-9080    773 779-6848_  MLS #
491 _630-748-9765_   _630-786-3105_  Phone                                        Fax
492 Phone           Fax              Phone                                        Fax
493 LINDETTAHARRIS@YAHOO.COM         E-mail  _Dorothy@dorothyharmon.com_
494 E-mail                           E-mail
495 DIANA TADLOCK                             _JOSEPH A. BALDI_
496 Buyer's Attorney         E-mail   Seller's Attorney          E-mail
497 _630-782-0833_   _630-617-5741_  _312 726-8150_    _312 332-4629_
498 Phone           Fax              Phone             Fax
499
500 Mortgage Company         Phone   Homeowner's/Condo Association (if any)    Phone
501
502 Loan Officer             Fax     Management Co./Other Contact             Phone
503
504 ©2006. Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or any
505 portion thereof is prohibited. Official form available at www.reallaw.org (web site of Illinois Real Estate Lawyers Association).
506
507             *Approved by the following organizations February 2006.*
508 Illinois Real Estate Lawyers Association, Aurora Tri-County Association of REALTORS®, Chicago Association of REALTORS®,
509 DuPage County Bar Association, Kane County Bar Association, Lake County Bar Association, McHenry County Association of
510 REALTORS®, North Shore - Barrington Association of REALTORS®, Northwest Suburban Bar Association, Oak Park Board of
511 REALTORS®, REALTORS® Association of the Fox Valley, REALTOR® Association of the Northwest Chicagoland, REALTOR®
512 Association of West/South Suburban Chicagoland, Three Rivers Association of REALTORS®, West Towns Board of REALTORS®
513
514
515
516
517
518 | Seller Rejection: This offer was presented to Seller on _____ 20_____ at _____ : _____ AM/PM
519 | and rejected on _____ 20____ at ____: ____ AM/PM _____
520 |                                              (Seller initials)      (Seller initials)

---

| Buyer Initial _MC_   Buyer Initial _MC_   Seller Initial _JB_   Seller Initial _____ |
| Address 5254 W. POLK, CHICAGO, IL, 60644 |

Page 10 of 11

**Exhibit A**

### BANKRUPTCY RIDER
### TO REAL ESTATE SALES CONTRACT
### DATED September 9, 2007

R-1      This Rider is attached to and made a part of the printed Sales Contract to which it is attached for the sale of the property located at **5254 W. Polk, Chicago, IL 60644**. In the event of a conflict or inconsistency between the terms of this Rider and the printed form contract, the terms of this Rider shall control.

R-2.     This contract and the obligations contemplated hereby are and at all times shall be subject to and conditioned on the prior approval of the Bankruptcy Court for the Northern District of Illinois in the case captioned "Shirley A. White,debtor, case number 07 B 06665. Seller shall promptly file a motion for approval of this contract with the United States Bankruptcy Court and shall use Seller's best efforts to schedule the court hearing upon the motion as soon as possible thereafter. In the event Seller is unable to obtain an order approving the sale contract within 60 days after the Date of Acceptance hereof, this Contract shall be deemed null and void and the earnest money shall be returned to Buyer.

R-3.     Seller shall sell the Property to Buyer free and clear of all liens, claims or interests (except for those permitted exceptions set forth in the Contract), with any liens, claims or interests to attach to the proceeds of sale after payment of all closing costs.

R-4.     Buyer has conducted such prior investigations and made such prior examinations of the Property and any records or other documents so as to be sufficiently informed of the nature and condition of the Property in order to execute this Contract,. Seller has not made and expressly states that he is not hereby making any representation or warranty of any kind or nature with respect to the Property or any personal property currently located thereon, all of which is being sold hereunder in an "as is-where is" condition.

R-5.     This Contract is executed by Joseph A. Baldi, not personally, but solely as bankruptcy trustee of the Estate of Shirley A. White,  debtor in the chapter 7 case pending in the Northern District of Illinois under case number 07 B 06665, in the exercise of the power and authority conferred upon and vested in him pursuant to the United States Bankruptcy Code, 11 U.S.C. section 101, et. seq.  No personal liability shall be asserted or be enforceable against the Trustee individually because or in respect of the execution of this Contract, the performance of the obligations hereunder, or the transaction contemplated hereby, all such liability, if any, being expressly waived by Buyer.

Dated September 9, 2007.

__Marquita Curry__
        Print Buyer's Name(s)

Joseph A. Baldi, Trustee of the Estate of
**Shirley A. White, debtor**

_____        _____
        **Buyer**                                           **Seller**

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 07 B 06665 |
| | ) | Chapter 7 |
| Shirley A. White, | ) | Hon. Susan Pierson Sonderby |
| Debtor. | ) | Hearing Date:  October 17, 2007 |
| | ) | Time: 10:00 a.m. |

### Notice of Trustee's Application Order 1) Authorizing Sale of Real Estate Free and Clear of Liens, Claims and Interests and 2) Allowing and Authorizing Payment of Final Compensation to Real Estate Broker

TO:    DEBTOR, ALL CREDITORS AND OTHER PARTIES IN INTEREST

PLEASE TAKE NOTICE that on or about September 24, 2007 Joseph A. Baldi, as trustee, ("Trustee") of the estate of Shirley A. White, debtor ("Debtor"), filed Trustee's Application for Order 1) Authorizing Sale of Real Estate Free and Clear of Liens, Claims and Interests and 2) Allowing and Authorizing Payment of Final Compensation to Real Estate Broker ("Motion").  A copy of the Motion is on file and available for inspection and copying at the office of the Clerk of the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois  60604.  A copy of the Motion may also be obtained from the Trustee's attorneys at the address set forth below and on the internet at the Court's web site at www.ilnb.uscourt.gov/.

The Motion seeks authorization to sell the Estate's right, title and interest in the real estate located at 5254 W. Polk, Chicago, IL (the "Property"), a single family residence which is currently occupied by Debtor as her personal residence.  Trustee has received an offer from Marquita Curry ("Offer") to purchase the Property for a purchase price of $145,000.00.  A copy of the Offer is attached to the Motion.  The Property will be sold "as is, where is" free and clear of all liens, claims and interests, with all such liens, claims and interests to attach to the proceeds of sale.  Trustee believes that the Offer is fair and reasonable and represents a market price for the Property.  Trustee has listed the Property with Dorothy Harmon of Remax Preferred Properties and the Offer is the highest and best offer received for the Property.

Trustee also seeks authority to pay final compensation to Dorothy Harmon of Remax Preferred Properties for its services as a real estate broker for the Estate.  Pursuant to the listing agreement previously approved by the Court, Dorothy Harmon agreed that the broker's commission for services to the Estate would be 6% of the sale price for the Property, which is equal to $8,700.00.  Trustee also seeks authority to pay the first mortgage against the Property held by CitiMortgage, Inc., real estate taxes and other customary closing costs from the proceeds of sale.  Trustee has also requested authority to pay the Debtor's homestead exemption from the proceeds of sale.

Pursuant to Rule 6004(b) of the Federal Rules of Civil Procedure, objections, if any, to the proposed sale of the Property or the payment of the broker's commission as described in the Motion must be filed on or before **October 11, 2007,** with the Clerk of the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois  60604, with a copy to be served concurrently upon Trustee's counsel at the address set forth below.

A hearing will be held upon the Trustee's Motion and any objections thereto on **October 17, 2007 at 10:00 a.m.** before the Honorable Susan Pierson Sonderby, Courtroom 642, 219 South Dearborn Street, Chicago, Illinois  60604, at which time you may, but need not, appear and be heard.  If no objections are filed or if no party requests a formal hearing on the Motion, the Motion may be granted without further hearing thereon.

DATED:  September 24, 2007

Joseph A. Baldi, Trustee of the Estate of
Shirley A. White,  Debtor

Joseph A. Baldi
Attorney I.D. No. 00100145
JOSEPH A. BALDI & ASSOCIATES, P.C.
19 South LaSalle Street, 19th floor
Chicago, Illinois  60603    (312) 726-8150

### Exhibit A